

FILED & ENTERED

MAR 10 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>KATHLEEN KELLOGG-TAXE,<br><br>               Debtor.<br><br>_____<br><br>CAROLYN A. DYE, Chapter 7 Trustee,<br><br>               Plaintiff,<br><br>  vs.<br><br>RICHARD TAXE, RONALD TAXE, MASSROCK, INC., DWARFCO PRODUCTIONS, INC., and DOES 1-20, inclusive,<br><br>               Defendants. | Case No. 2:12-bk-51208-RK<br><br>Chapter 7<br><br>Adv. No. 2:13-ap-02019-RK substantively consolidated with Adv. No. 2:13-ap-01378-RK<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFF'S COMPLAINT FOR: (1) TURNOVER OF PROPERTY OF THE ESTATE AND (2) DECLARATORY RELIEF [11 U.S.C. §§ 541, 542] |

The above-captioned consolidated adversary proceedings on the adversary complaint of Plaintiff Carolyn A. Dye, Chapter 7 Trustee ("Plaintiff" or "Trustee") in the bankruptcy case of Kathleen Kellogg-Taxe ("Debtor"), asserting claims for turnover and for declaratory relief pursuant to 11 U.S.C. §§ 541 and 542, came on for trial before the undersigned United States Bankruptcy Judge on July 28, 2016.  James A. Dumas, of the law firm of Dumas and Kim, APC, appeared for Plaintiff.  Defendant Richard Taxe

1 | represented himself.  No one appeared for the other defendants, Ronald Taxe, Massrock,

2 | Inc., and Dwarfco Productions, Inc.

3 |       After trial, on August 10, 2016, Plaintiff filed and lodged her Proposed Findings of

4 | Fact and Conclusions of Law.  Electronic Case Filing No. ("ECF") 91.   On September 9,

5 | 2016, Defendant Richard Taxe filed objections to Plaintiff's Proposed Findings of Fact

6 | and Conclusions of Law and counter-proposed findings of fact and conclusions of law

7 | after trial under the title, "Richard Taxe's Opposition to the Trustee's (Proposed) Findings

8 | of Fact and Conclusions of Law."  ECF 92.  On September 13, 2016, Defendant Richard

9 | Taxe filed his amended objections to Plaintiff's Proposed Findings of Fact and

10 | Conclusions of Law and amended counter-proposed findings of fact and conclusions of

11 | law after trial under the title, "Notice of Errata to Richard Taxe's Opposition to the

12 | Trustee's (Proposed) Findings of Fact and Conclusions of Law."  ECF 93.  On September

13 | 20, 2016, Plaintiff filed her Objections to Proposed Findings of Fact and Conclusions of

14 | Law Submitted by Defendant Richard Taxe.  ECF 94.  Afterwards, the court took the

15 | matter under submission.

16 |       Having considered the witness testimony and exhibits received at trial, and the

17 | other matters in evidence, the court hereby makes the following findings of fact and

18 | conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure

19 | and Rule 52 of the Federal Rules of Civil Procedure.[1]

20 |

---

21 | [1] Any findings of fact that should be properly characterized as conclusions of law will be
considered as such, and any conclusions of law that should be properly characterized as findings

22 | of fact will be considered as such.  The court comments that it had to expend considerable time to
confirm the accuracy of the representations made in the proposed findings of fact and

23 | conclusions of law submitted by the parties since the citations to the evidence by counsel for
Plaintiff were not specific and not very helpful, citing only to documents generally without pin

24 | citations.  Moreover, the legal analysis offered by counsel for Plaintiff in Plaintiff's Trial Brief and
Plaintiff's Proposed Findings of Fact and Conclusions of Law was devoid of any legal analysis or

25 | authorities in support of Plaintiff's major claim seeking to disregard the separate legal identity of
Dwarfco Productions, Inc., a corporation organized under Nevada law, to allow Plaintiff to claim

26 | that Dwarfco and its assets are property of the bankruptcy estate of the Debtor, thus, forcing the
court to engage in its own independent research to identify the applicable law to make sure that

27 | the ruling on the claim was legally correct.  That counsel merely argued in a conclusory fashion
that Plaintiff "was engaged in a default prove-up and she only need to make out a *prima facie*

28 | case" without citing or discussing the appropriate legal standard under applicable law is

**PROCEDURAL CONSIDERATIONS**

1.  The above case caption lists two adversary proceedings, Adv. No. 2:13-ap-02019-RK and Adv. No. 2:13-ap-01378-RK, as being substantively consolidated, but it appears from the case dockets for the adversary proceedings that Adv. No. 2:13-ap-01378-RK has been fully resolved since judgment has been entered in that adversary proceeding and that adversary proceeding has been closed.  Creditor Morrison Management, S.A., initiated Adv. No. 2:13-ap-01378-RN against Defendant Kathleen Kellogg-Taxe, Debtor, objecting to and seeking revocation of discharge under 11 U.S.C. § 727(c), (d) and (e).  By motion and order, Trustee was substituted in as the plaintiff for Morrison Management, S.A.  Trustee concurrently filed motions to consolidate Adv. No. 2:13-ap-01378-RN with Adv. No. 2:13-ap-02019-RN in the latter proceeding and for summary judgment in Adv. No. 2:13-ap-01378-RN.  At the hearing on the motions on September 11, 2014, the court by Judge Richard M. Neiter granted both motions and directed counsel for Trustee to submit proposed orders.  The case docket reflects that a judgment was entered on the motion for summary judgment in Adv. No. 2:13-ap-01378-RN, and that an order was entered on the motion to consolidate in the two adversary proceedings in Adv. No. 2:13-ap-02019-RN.  After entry of summary judgment in Adv. No. 2:13-ap-01378-RN, that adversary proceeding was closed on March 5, 2015.  Since the judgment was entered in Adv. No. 2:13-ap-01378-RN and the adversary proceeding has been closed, this leaves only Adv. No. 2:13-ap-02019-RN/RK for disposition.

2.  Defendant Richard Taxe appeared in this adversary proceeding, Adv. No. 2:13-ap-02019-RN, for himself without counsel, and filed an answer on November 15, 2013.  *Answer of Defendant Richard Taxe*, ECF 8, filed on November 15, 2013.  Defendant Richard Taxe appeared at the trial in this adversary proceeding, Adv. No. 2:13-ap-02019-RK.  After trial, on September 13, 2016, Defendant Richard Taxe filed his amended objections to Plaintiff's Proposed Findings of Fact and Conclusions of Law and amended

completely inadequate.  The court is disappointed with the lack of effort by counsel of such longstanding experience in briefing the major legal issues of the case.

counter-proposed findings of fact and conclusions of law after trial under the title, "Notice of Errata to Richard Taxe's Opposition to the Trustee's (Proposed) Findings of Fact and Conclusions of Law."  ECF 93.  Trustee has objected to this document as untimely under the court's post-trial scheduling order, ECF 89, entered on August 3, 2016, which set a deadline of September 9, 2016 for Defendant's objections to Trustee's proposed findings of fact and conclusions of law and counter-proposed findings of fact and conclusions of law, and on grounds that it is a far longer document than the original and really the untimely extension of the original document.  ECF 94 at 1-2.  The court has considered and overrules Trustee's objections on grounds that the court should accord some latitude to Defendant Richard Taxe as a self-represented litigant, the delay in filing the amended document, only four days, was minimal, the amended document, though technically not merely an "errata," made relatively minor revisions to the original, and the filing of the amended document still gave Trustee at least a week to prepare and file objections to the document as amended, and thus, any prejudice to Trustee from the amended filing is minimal.

     3.   Defendant Ronald Taxe appeared in this adversary proceeding, Adv. No. 2:13-ap-02019-RN, through counsel, Gregory Grantham and John Saba, of the Law Office of Gregory Grantham, in an answer filed on November 19, 2013.  *Answer of Defendants Ronald Taxe and Dwarfco Productions, Inc.*, ECF 9, filed on November 19, 2013.  The answer was filed jointly with Defendant Dwarfco Productions, Inc.  Although Defendant Ronald Taxe appeared in this adversary proceeding, he did not appear at trial.

     4.   Defendant Massrock, Inc., is the debtor in a pending Chapter 7 bankruptcy case, No. 1:16-bk-12152-GM, and the automatic stay arising in that case stays the adversary proceeding in which it is named as a defendant in Adv. No. 2:13-ap-02019-RK.  As discussed with the parties at trial, the court dismisses Defendant Massrock, Inc., as a party to Adv. No. 2:13-ap-02019-RK without prejudice.

     5.   Defendant Dwarfco Productions, Inc., appeared in this adversary proceeding,

4

Adv. No. 2:13-ap-02019-RN, through counsel, Gregory Grantham and John Saba, of the

Law Office of Gregory Grantham, in an answer filed on November 19, 2013. *Answer of*

*Defendants Ronald Taxe and Dwarfco Productions, Inc*., ECF 9, filed on November 19,

2013. The answer was filed jointly with Defendant Ronald Taxe. Although Defendant

Dwarfco Productions, Inc., appeared in this adversary proceeding, it did not appear at

trial.

## **FINDINGS OF FACT**

Findings of Fact 1 through 15 are undisputed facts that were established through

the Joint Pre-Trial Order ("JPTO"), ECF 74, filed on March 7, 2016.

1. The defendant and debtor, Kath[leen] Kellogg-Taxe (the "Debtor"), filed a

Chapter 11 bankruptcy on December 18, 2012. The case was converted to Chapter 7 on

January 24, 2013. Plaintiff Carolyn A. Dye was appointed trustee (and shall hereinafter

be referred to as the "Trustee"). *JPTO,* ECF 74 at 2, Undisputed Procedural Facts, ¶1.

2. On March 20, 2013, creditor Morrison Management filed a complaint objecting

to the Debtor's discharge, initiating adversary proceeding no. 2:13-ap-01378-RN. The

Debtor filed an answer to this complaint. *JPTO,* ECF 74 at 2, Undisputed Procedural

Facts, ¶2.

3. On October 11, 2013, Trustee filed a complaint for turnover of property and

declaratory relief in which she named as defendants Richard Taxe, Ronald Taxe,

Massrock, Inc., and Dwarfco Productions, Inc. ("Dwarfco"), initiating adversary

proceeding no. 2:13-ap-02019-RN. Among the assets that Trustee sought to have turned

over to her were a deed of trust on a property in Boron, California, document no.

0208089126, recorded in Kern County, that was in the name of defendant Dwarfco (the

"Dwarfco Deed of Trust"), a painting by Wassily Kandinsky (the "Kandinsky painting") and

gemstones that were allegedly owned and in the possession of defendant Richard Taxe.

Answers to the complaints were filed by Richard Taxe, Ronald Taxe, and Dwarfco.

*JPTO*, ECF 74 at 2, Undisputed Procedural Facts, ¶3.

5

4.   On November 18, 2013, Massrock, Inc., a defendant in adversary no. 2:13-ap-02019 filed a Chapter 11 bankruptcy, case no. 2:13-bk-37648-RN.  The case was converted to Chapter 7 on February 18, 2014, and Mr. David Good[rich] was named as trustee.  As a consequence of the automatic stay, Massrock has had no participation in the adversary proceeding.  *JPTO*, ECF 74 at 2, Undisputed Procedural Facts, ¶4.

5.   By an order entered September 22, 2014, adversary proceeding no. 2:13-ap-01378 was consolidated with adversary proceeding no. 2:13-ap-02[0]19.  *JPTO*, ECF 74 at 2, Undisputed Procedural Facts, ¶5.

6.   On November 5, 2014, the Trustee filed a motion for summary judgment in Adversary proceeding no. 2:13-ap-01378, which was scheduled to be heard on February 3, 2015.  The deadline for filing an opposition to the motion was January 13, 2015 and no opposition was filed.  This motion is thus deemed to be unopposed and this Joint Pretrial Order assumes that the motion will be granted and that the Debtor will not have any further participation in this consolidated adversary proceeding.  *JPTO*, ECF 74 at 2, Undisputed Procedural Facts, ¶6.

7.   Defendant Richard Taxe is the Debtor's husband and defendant Ronald Taxe is the brother of Richard.  *JPTO*, ECF 74 at 3, Undisputed Nonprocedural Facts, ¶1.

8.   In 2009 and again in 2012, prior to the filing of the within case, the Debtor filed a total of four bankruptcies, cases nos. 2:09-bk-29787-EC, 2:12-33767-NB, 2:12-bk-40808-SK, and 2:12-bk-44947-WB (the "subject prior bankruptcies").  In the schedules submitted in each of the subject prior bankruptcies, the Debtor testified that she had a one-half interest in Massrock, Inc. and Dwarfco.  She stated in case no. 2:09-bk-29787-EC that the combined value of her interests in the corporations was $4 million, and in the three subsequent cases that the value was $2.5 million.  *JPTO*, ECF 74 at 3, Undisputed Nonprocedural Facts, ¶2.

9.   In the subject prior bankruptcies, the Debtor testified that the income from the

Dwarfco Deed of Trust was property of her Chapter 13 bankruptcy estate. *JPTO*, ECF 74 at 3, Undisputed Nonprocedural Facts, ¶3.

10. The Debtor testified in a prior bankruptcy that her estate included original paintings having a value of $50,000 and "furs and jewelry," including "gems" having a value of $40,000. *JPTO,* ECF 74 at 3, Undisputed Nonprocedural Facts, ¶4.

11. Richard Taxe testified at his [Federal] Rule [of Bankruptcy Procedure] 2004 examination held on July 23, 2013 in the within bankruptcy that he was the owner of and was in possession of the Kandinsky painting. *JPTO*, ECF 74 at 3, Undisputed Nonprocedural Facts, ¶5.

12. Richard Taxe testified at his Rule 2004 examination held on July 23, 2013 that he owned gemstones. *JPTO*, ECF 74 at 3, Undisputed Nonprocedural Facts, ¶6.

13. On April 21, 2014, the Court issued an "Order Granting, in Part, Denying, in Part, Trustee's Motion for Preliminary Injunction and Appointment of Receiver" (the "Preliminary Injunction"). Among other things, the Preliminary Injunction provided that "the Kandinsky painting and the gemstones shall be turned over to the Trustee, forthwith, to be held in trust pending the resolution of this adversary proceeding or further order of the court." *JPTO,* ECF 74 at 3, Undisputed Nonprocedural Facts, ¶7.

14. On or about June 3, 2015, Richard Taxe delivered a collection of gemstones to the Trustee. *JPTO,* ECF 74 at 3, Undisputed Nonprocedural Facts, ¶8.

15. The Dwarfco Deed of Trust was in the original principal sum of $1,100,000. *JPTO,* ECF 74 at 3, Undisputed Nonprocedural Facts, ¶9.

After trial, the court makes the following additional findings of fact.

` 16. Defendant Dwarfco is currently in "default" status as a Nevada corporation. *Business Entity Information for Dwarfco Productions Inc., Nevada Secretary of State, attached as Exhibit A to Plaintiff's Request for Judicial Notice, Plaintiff's Trial Exhibit 10.* This information indicates that Dwarfco was organized on September 24, 1990 that being its "file date," and 1990 as the year of Dwarfco's incorporation is also inferred by its

Nevada identification number, NV Business ID, NV19901037474, and its Nevada Entity Number, C8755-1990, which contain the year 1990. *Id.*

17. Defendant Richard Taxe and the Debtor were married in 1984. Defendant Richard Taxe married the Debtor in 1984. *Transcript of Deposition of Richard Taxe, Vol. 1, July 23, 2013, at 50, attached as Exhibit A to Declaration of James A. Dumas, Plaintiff's Trial Exhibit 11 ("Richard Taxe Deposition Transcript").*

18. Defendant Richard Taxe and the Debtor have no written agreements with each other as to their property interests. *Richard Taxe Deposition Transcript* at 26, *Plaintiff's Trial Exhibit 11*; *Trial Testimony of Richard Taxe*, July 28, 2016, at 11:08 a.m. and 11:30-11:31 a.m.

19. Defendant Richard Taxe is a self-employed businessperson or "entrepreneur." *Richard Taxe Deposition Transcript* at 114, *Plaintiff's Trial Exhibit 11*; *Trial Testimony of Richard Taxe*, July 28, 2016, at 11:13-11:14 a.m. Except for a bank account opened in 2009 to accept deposits of his social security checks, Defendant Richard Taxe has not had a bank account in his own name since 1965. *Richard Taxe Rule 2004 Examination Testimony* at 13, *Plaintiff's Trial Exhibit 11; Trial Testimony of Richard Taxe*, July 28, 2016, at 11:19 a.m.

20. Defendant Richard Taxe routinely paid his personal expenses out of Massrock's bank account. *Richard Taxe Rule 2004 Examination Testimony* at 69 and 126, *Plaintiff's Trial Exhibit 11*. Defendant Richard Taxe specifically testified that he used $98,500 in money from Defendant Massrock's account to pay his family's expenses. *Trial Testimony of Richard Taxe*, July 28, 2016, at 10:14-10:16 a.m. At times, Defendant Richard Taxe has declared under penalty of perjury that he does not own an interest in Massrock, *Richard Taxe Rule 2004 Examination Testimony* at 69, *Plaintiff's Trial Exhibit 11,* and at other times, he has declared under penalty of perjury that he is a minority shareholder of Massrock. *Plaintiff's Trial Exhibit 8* at 2-3, ¶ 6, *Defendant, Richard Taxe's Declaration in Support of Opposition to Motion for Preliminary Injunction.*, ECF 17.

21. According to Defendant Richard Taxe, he avoids claiming an interest in any corporations and business entities that he controls, or whose assets he controls, "because of judgments."  He does not "own anything," he's "just a consultant" to the entity in question.  *Richard Taxe Rule 2004 Examination Testimony* at 39, *Plaintiff's Trial Exhibit 11*.

22. Defendant Richard Taxe stated in a declaration filed in this case: "I am an officer of Dwarfco and manage its business under a written management contract. Dwarfco currently has one asset—a non-performing note from a bankrupt mining company named Carlton Global Resources, LLC, ("Carlton") secured by property in Kern County which Dwarfco sold in 2007 for a number of years.  I was entitled to receive income from interest payments on the notice as compensation for my services." *Plaintiff's Trial Exhibit 8* at 2-3, ¶ 6, *Defendant, Richard Taxe's Declaration in Support of Opposition to Motion for Preliminary Injunction*., ECF 17.  However, in this declaration, Defendant Richard Taxe denied that he and his wife, the Debtor, own any stock in Dwarfco, but stated that his brother, Defendant Ronald Taxe, and his wife, owned the stock in Dwarfco.  *Id.*

23. Defendant Richard Taxe testified at trial that Defendant Ronald Taxe told Defendant Richard Taxe that Defendant Richard Taxe could run checks and business through Dwarfco as long as Defendant Richard Taxe did not make the company "vulnerable."  *Trial Testimony of Richard Taxe,* July 28, 2016, at 11:09-11:11 a.m. Defendant Richard Taxe deposited his money, including checks made out to him, into Dwarfco's bank account, and then paid his family's personal expenses from that account. *Trial Testimony of Richard Taxe,* July 28, 2016, at 11:09-11:11 a.m.  Defendant Richard Taxe did such to prevent people from "trying to cause him trouble."  *Trial Testimony of Richard Taxe,* July 28, 2016, at 11:10-11:11 a.m.

23. The "Dwarfco Deed of Trust," recorded in Kern County, California against a

9

property located in Boron, California, had an original face value of $1.1 million and was first acquired in 2007 during the marriage of Defendant Richard Taxe and the Debtor. Since 2007 the Dwarfco Deed of Trust has been the only alleged asset of Dwarfco. *Declaration of Ronald Taxe, filed on December 9, 2013 as part of Opposition to Motion for Preliminary Injunction, ¶¶ 7-8, Plaintiff's Trial Exhibit 7 ("Ronald Taxe Declaration")*; *JPTO,* ECF 74 at 3, Undisputed Nonprocedural Facts, ¶3; *see also, Plaintiff's Trial Exhibit 8* at 2-3, ¶ 6, *Defendant, Richard Taxe's Declaration in Support of Opposition to Motion for Preliminary Injunction*., ECF 17.

24. Ronald Taxe, the alleged owner of Dwarfco, stated in a declaration filed in this case that income from the so-called "Dwarfco Deed of Trust" recorded as Instrument No. 0208089126 in Kern County, California against a property located in Boron, California, was paid, not to the purported owner of the note, Dwarfco, but to Defendant Richard Taxe. *Ronald Taxe Declaration*, ¶ 7, *Plaintiff's Trial Exhibit 7; see also, Plaintiff's Trial Exhibit 8* at 2-3, ¶ 6, *Defendant, Richard Taxe's Declaration in Support of Opposition to Motion for Preliminary Injunction*., ECF 17.  Defendant Richard Taxe also testified at trial that he received income from the Dwarfco Deed of Trust and that his wife, the Debtor, also received income from the Dwarfco Deed of Trust.  *Trial Testimony of Richard Taxe,* July 28, 2016, at 11:33-11:36 a.m.

25. The court draws a reasonable inference that some of the income from the Dwarfco Deed of Trust was deposited into the bank account of Kellspin, Inc., from which Defendant Richard Taxe paid his family's expenses, and Richard Taxe was "very familiar" with Kellspin, having been an officer.  *Cancelled checks drawn on the account of Carlton Global Resources, LLC, payable to DWARFCO or Kellspin Inc., with deposit slips, for account of Kellspin Inc., Plaintiff's Trial Exhibit 11, attached as Exhibit C to Declaration of James A. Dumas at 86, 89, 107, 127, 155, 166, 177, 180 and 215; Richard Taxe Deposition Transcript at 70-716, Plaintiff's Trial Exhibit 11.*  However, while drawing such

1    an inference, the court does not heavily rely on such evidence since it is only suggestive

2    of a pattern of activity by Defendant Richard Taxe.

3        26.  In Debtor's bankruptcy petitions and bankruptcy schedules in two of her

4    Chapter 13 bankruptcy cases, she stated that the income from the Dwarfco Deed of Trust

5    was property of the bankruptcy estate in her bankruptcy cases.  *JPTO,* ECF 74 at 3,

6    Undisputed Nonprocedural Facts, ¶3; *Schedule I-Current Income of Individual Debtor(s),*

7    *In re Kathleen Kellogg-Taxe, No. 2:09-bk-29787 EC Chapter 13, filed August 14, 2009,*

8    *Plaintiff's Trial Exhibit 2; Schedule I-Current Income of Individual Debtor(s), In re*

9    *Kathleen Kellogg-Taxe, No. 2:12-bk-44947 WB Chapter 13, filed October 17, 2012,*

10    *Plaintiff's Trial Exhibit 6.*

11        27. In Debtor's bankruptcy petition and bankruptcy schedules in four of her

12    Chapter 13 bankruptcy cases, she stated that an interest in Dwarfco, Inc. was property of

13    the bankruptcy estate.  *JPTO,* ECF 74 at 3, Undisputed Nonprocedural Facts, ¶2;

14    *Schedule B-Personal Property, In re Kathleen Kellogg-Taxe, No. 2:09-bk-29787 EC*

15    *Chapter 13, filed August 14, 2009, Plaintiff's Trial Exhibit 1; Schedule B-Personal*

16    *Property, In re Kathleen Kellogg-Taxe, No. 2:12-bk-33767 NB Chapter 13, filed July 24,*

17    *2012, Plaintiff's Trial Exhibit 3; Schedule B-Personal Property, In re Kathleen Kellogg-*

18    *Taxe, No. 2:12-bk-40808 SK Chapter 13, filed September 25, 2012, Plaintiff's Trial*

19    *Exhibit 4;  Schedule B-Personal Property, In re Kathleen Kellogg-Taxe, No. 2:12-bk-*

20    *44947 WB Chapter 13, filed October 17, 2012, Plaintiff's Trial Exhibit 5.*

21        28.  The court draws a reasonable inference from the foregoing evidence that a

22    corporation or other business entity whose assets are controlled by Richard Taxe is in

23    fact owned by him.

24        29.  The court draws a reasonable inference from the foregoing evidence that an

25    asset that is ostensibly owned by a corporation or other business entity in which

26    Defendant Richard Taxe claims no interest, but which is controlled and enjoyed by him, is

27    in fact his property.

28

30. The court draws a reasonable inference from the foregoing evidence that the shares of Dwarfco are assets owned by Defendant Richard Taxe and the Debtor because of the control and enjoyment of the assets by Defendant Richard Taxe.

31. The court draws a reasonable inference from the foregoing evidence that the Dwarfco Deed of Trust was an asset owned by Defendant Richard Taxe and the Debtor as the owners of the shares of Dwarfco because of the control and enjoyment of the asset by Defendant Richard Taxe.

32. In approximately 2009 or 2010, Defendant Richard Taxe had acquired the Kandinsky painting in a trade for a Max Ernst sculpture which was "worth a lot of money." *Richard Taxe Rule 2004 Examination Testimony* at 51-52, *Plaintiff's Trial Exhibit 11*.

33. Defendant Richard Taxe has never complied with the court's order of April 21, 2014, and he now claims that he turned over possession of the painting to a third party in Texas named Diane Raymond.  *Declaration of Carolyn A. Dye*, ¶ 3, *Plaintiff's Trial Exhibit 9 ("Dye Trial Declaration"); Trial Testimony of Richard Taxe*, July 28, 2016 at 11:20-11:22 a.m. and 11:40-11:42 a.m.

34. Richard Taxe waited 14 months to comply in any respect with the order that he turn over the gemstones to Trustee, and when he finally did so, the gemstones that he turned over were of minimal value.  *Dye Trial Declaration*, ¶ 4; *JPTO*, ECF 74 at 3, Undisputed Nonprocedural Facts, ¶8.

35.  In her prior bankruptcy cases, the Debtor testified to having "gemstones" having a value of $40,000.  *JPTO*, ECF 74 at 3, Undisputed Nonprocedural Facts, ¶4. Specifically, the Debtor on her Schedule B-Personal Property, filed on August 14, 2009 in her prior bankruptcy case no. 2:09-bk-29787-EC, listed the value of "Diamond Ring, Watches, Mink Coat, Gems, etc." with a value of $40,000.00. *Schedule B-Personal Property, In re Kathleen Kellogg-Taxe, No. 2:09-bk-29787 EC Chapter 13, filed August 14, 2009, Plaintiff's Trial Exhibit 1.*

36. The gemstones turned over by Defendant Richard Taxe to Trustee in June

12

1   2015 have a value of $2,491.  *Trial Declaration of Jessica Toobian; Plaintiff's Trial Exhibit*

2   *16, Gemological Lab & Appraisal Certificates.*

3       37. Pursuant to Federal Rule of Evidence 201, the court takes judicial notice

4   that neither the existence of the gemstones nor the Kandinsky painting were

5   disclosed by the Debtor at the time of her bankruptcy petition filed in this bankruptcy case

6   in December 2012 or in her amended bankruptcy schedules that she filed in April 2013

7   and the existence of these assets was first disclosed at Defendant Richard Taxe's Rule

8   2004 examination taken in July and August 2013.  *Petition*, ECF 1, No. 2:12-bk-51209-

9   RN Chapter 11 (main bankruptcy case), filed on December 18, 2012; Amended Schedule

10  B, No. 2:12-bk-51209 RN Chapter 11 (main bankruptcy case), ECF 60, filed on May 13,

11  2013; *JPTO*, ECF 74 at 3, Undisputed Nonprocedural Facts, ¶¶5-6.

12      38. Pursuant to Federal Rule of Evidence 201, the court takes judicial notice

13  that in November 2013, Trustee brought the motion for preliminary injunction

14  seeking turnover of assets that resulted in the April 21, 2014 order requiring Defendants

15  Richard Taxe, Ronald Taxe and Dwarfco to turn assets over to Trustee.  *Plaintiff's Notice*

16  *of Motion and Motion for Preliminary Injunction and Appointment of Receiver*, ECF 4, filed

17  on November 14, 2013.

18      39. As a result of the failure of Defendant Richard Taxe to turn over the Kandinsky

19  painting and to timely turn over any gemstones, Trustee has been prevented from

20  ascertaining the value of these assets as of the time of the filing of Debtor's bankruptcy

21  petition in December 2012 and from realizing on their value on behalf of the bankruptcy

22  estate.

23      40. At trial, Defendant Richard Taxe testified that he would try to give the

24  Kandinsky painting back to Trustee, but that it would require him to get it back from Diane

25  Raymond.  *Trial Testimony of Richard Taxe*, July 28, 2016, at 11:20-11:27 a.m.

26  However, Defendant Richard Taxe also testified that the painting he was referring to was

27  not painted by Wassily Kandinsky and is worthless.  *Trial Testimony of Richard Taxe*,

28

July 28, 2016, at 11:20-11:27 a.m.  Although the court finds that the testimony of

Defendant Richard Taxe on these points is not credible because as of the date of the

trial, three and one-half years after this bankruptcy case commenced, and more than two

years after the court ordered Defendant Richard Taxe to turn the painting over to Trustee,

there is no reasonable basis for the court to believe that Defendant Richard Taxe would

now turn any such painting over to Trustee post-trial, or if he did so, that it would be the

same "Kandinsky" painting that he had when the Debtor's bankruptcy case was filed in

December 2012, nevertheless, Trustee has not produced sufficient evidence to establish

the value of the Kandinsky painting for the court to award its value to the bankruptcy

estate from Defendant Richard Taxe.  Trustee offers no evidence as to the nature, origin

or value of the Kandinsky painting, other than an admission from Defendant Richard

Taxe that it is purportedly a Kandinsky.

41. Based on the fact that Defendant Richard Taxe did not turn over gemstones to

Trustee until June 2015, fourteen months after this court ordered him to turn over all of

his gemstones and more than two and a half years after Debtor's bankruptcy case was

filed, *Trial Testimony of Richard Taxe*, July 28, 2016, at 10:14-10:16 a.m., the court

draws a reasonable inference that the gemstones he turned over in June 2015 were not

all of the gemstones that he had when the Debtor's bankruptcy case was filed.

42. In her trial brief, Trustee proposed that the court enter a judgment against

Defendant Richard Taxe with respect to the Kandinsky painting in the sum of $10,000.

ECF 81 at 9.  At a hearing in a related adversary proceeding, Adv. No. 2:13-ap-01781-

RK, on February 10, 2017, Trustee through counsel and in the presence of Defendant

Richard Taxe, indicated that the value that Trustee would agree for the Kandinsky

painting would be $500.  *Statement of James A. Dumas on the record*, *Trial in Dye. v.*

*Kellspin, Inc. et* al., 2:13-ap-01781-RK, February 10, 2017, at 10:08-10:09 a.m.

## **CONCLUSIONS OF LAW**

1.  This court has jurisdiction over this adversary proceeding pursuant to 28

14

1   U.S.C. §§ 1334 and 157 as a civil proceeding arising under the Bankruptcy Code, 11

2   U.S.C., or arising in or related to cases under the Bankruptcy Code, 11 U.S.C.

3       2.  This is a core proceeding under 11 U.S.C. § 157(b)(2)(A) and (E) as a matter

4   concerning the administration of the estate and for turnover of property of the estate.

5       3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1409(a) because

6   the Debtor's bankruptcy case is pending in this judicial district.

7       4.  Community property of a married individual, such as the Debtor, and her

8   spouse, domiciled in California, is property of her bankruptcy estate. 11 U.S.C. §

9   541(a)(2).

10      5.  Under California law, property acquired by a spouse during marriage is

11  presumptively community property.  California Family Code § 760; *Marriage of Valli,* 58

12  Cal.4th 1396, 1406 (2014).

13      6.  This community property presumption under California law can be rebutted if

14  the property's acquisition is (1) traceable to a separate property source, (2) acquired by

15  gift or bequest, or (3) earned or accumulated while the spouses are living separate and

16  apart.  *In re Marriage of Valli,* 58 Cal.4th at 1400, *citing inter alia, In re Marriage of Lucas,*

17  27 Cal.3d 808, 815 (1980) and California Family Code §§ 770 and 771.  The standard of

18  proof required to rebut the community property presumption under California Family

19  Code § 760 is the preponderance of the evidence.  *In re Marriage of Valli,* 58 Cal.4th at

20  1400, *citing In re Marriage of Ettefagh*, 150 Cal.App.4th 1578, 1591 (2007).

21      7.  Under California law, community property can only be transmuted into separate

22  property by an instrument in writing.  California Family Code § 852; *Estate of MacDonald,*

23  51 Cal.3d 262, 267-268 (1990).

24      8.  Under 11 U.S.C. § 541(a)(2), community property owned by the Debtor and

25  Defendant Richard Taxe as of the date of the filing of Debtor's bankruptcy petition in

26  December 2012, was property of Debtor's bankruptcy estate.

27      9.  Based on the reasons detailed below, the court determines that the ownership

28

1    of Dwarfco through the shares is the community property of the Debtor and Defendant

2    Richard Taxe in that Dwarfco was organized as a Nevada corporation in 1990 during

3    their marriage and they acquired their interests in Dwarfco in 1990 or thereafter and

4    before the petition date in this case and Defendant Richard Taxe and the Debtor had the

5    attributes of ownership through control and management of Dwarfco and beneficial

6    enjoyment of Dwarfco through receipt of its income during their marriage.  Further,

7    because Defendant Richard Taxe failed to offer evidence rebutting the community

8    property presumption, and because Defendant Richard Taxe testified that he and the

9    Debtor had no written agreements, which necessarily implies that the ownership in

10   Dwarfco was never transmuted, as detailed further below, the court determines that the

11   Dwarfco shares are the community property of the Debtor and Defendant Richard Taxe.

12        10. Because the Dwarfco Deed of Trust is property of Dwarfco, in determining

13   whether Trustee can recover the Dwarfco Deed of Trust, the court considers whether it

14   can apply the alter ego doctrine and find that Dwarfco is the alter ego of Defendant

15   Richard Taxe.  In doing so, the court applies Nevada law because Dwarfco was

16   organized as a corporation under Nevada law.  Under Nevada law, the Nevada Supreme

17   Court has applied the common law doctrine of alter ego to recover an individual debt from

18   the assets of a corporation determined to be the alter ego of the individual debtor.  *LFC*

19   *Marketing Group, Inc. v. Loomis*, 116 Nev. 896, 8 P.3d 841 (2000).  "[I]t is particularly

20   appropriate to apply the alter ego doctrine in 'reverse' when the controlling party uses the

21   controlled entity to hide assets or secretly to conduct business to avoid the pre-existing

22   liability of the controlling party."  *Id.,* 116 Nev. at 903, 8 P.3d at 846, *quoting, Select*

23   *Creations, Inc. v. Paliafito America, Inc.,* 852 F.Supp. 740, 774 (E.D. Wis. 1994).  "[W]e

24   conclude that reverse piercing is appropriate in those limited instances where the

25   particular facts and equities show the existence of an alter ego relationship and require

26   that the corporate fiction be ignored so that justice may be promoted."  *LFC Marketing*

27   *Group*, *Inc. v. Loomis,* 116 Nev. at 904, 8 P.3d at 846.

28

11. Under Nevada law, "the elements for finding an alter ego, which must be established by a preponderance of the evidence, are: (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice." *Id.* at 846-847, *citing and quoting, Polaris Industrial Corp. v. Kaplan,* 103 Nev. 598, 601, 747 P.2d 884, 886 (1987).  Further, the following factors may indicate the existence of an alter ego relationship: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities.  *LFC Marketing Group*, *Inc. v. Loomis,* 116 Nev. at 904, 8 P.3d at 847, *citing, Polaris Industrial Corp. v. Kaplan,* 103 Nev. at 601, 747 P.2d at 887. Nonetheless, "[w]e have emphasized, however, that '[t]here is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case.'" *LFC Marketing Group*, *Inc. v. Loomis,* 116 Nev. at 904, 8 P.3d at 847, *citing and quoting, Polaris Industrial Corp. v. Kaplan,* 103 Nev. at 601, 747 P.2d at 887.

12. Based on the findings above, the court determines that the circumstances of this matter justify that the corporate fiction of Dwarfco's separate legal identity be ignored, and further determines that Dwarfco is the alter ego of Defendant Richard Taxe.  Dwarfco was not only influenced and governed by the Defendant Richard Taxe, but there was a unity of interest between the two because Defendant Richard Taxe had control and enjoyment of Dwarfco and used Dwarfco's bank accounts to pay his family expenses. Defendant Richard Taxe commingled his funds with those of Dwarfco and treated Dwarfco's bank account as his own by depositing his money, including checks made out to him, into Dwarfco's bank account, and then paid bills for his family's personal living expenses from that account.  Defendant Richard Taxe also gave testimony at trial that

income from the Dwarfco note and deed of trust went to the Debtor, his spouse, rather

than the purported owner of the Dwarfco shares, his brother, Ronald Taxe, who failed to

appear at trial and defend his interests in Dwarfco.  Further, adherence to the corporate

fiction of a separate entity would, under the circumstances, promote injustice.  Here, it is

appropriate to disregard the corporate fiction where Defendant Richard Taxe avoids

claiming an interest in any corporations and business entities that he controls, or whose

assets he controls, "because of judgments", yet uses those corporations, including

Massrock, Dwarfco and Kellspin, Inc., to pay his personal and family expenses.  It would

be an injustice to allow Defendant Richard Taxe to reap the benefits of hiding behind a

corporation to pay his family expenses, yet not be exposed to the judgments of his

creditors.  Accordingly, the court determines that Trustee has shown by a preponderance

of the evidence that Dwarfco is the alter ego of Defendant Richard Taxe.

13.  The court also relies upon the Debtor's bankruptcy schedules, *JPTO*, ECF 74

at 3, Undisputed Nonprocedural Facts, ¶2, 2:12-bk-51208-RK, ECF 41, as evidence of

the interests of the Debtor and Defendant Richard Taxe in the shares of Dwarfco to

determine that as of the petition date, the Debtor had a 50% community property interest

in Dwarfco because the Debtor scheduled a 50% interest in Dwarfco on her Schedule B-

Personal Property in four of her prior bankruptcy cases, filed between August 14, 2009

and September 25, 2012, and in her initial Schedule B-Personal Property filed in this

bankruptcy case, and because the Debtor stated that the income from the Dwarfco Deed

of Trust was property of her Chapter 13 bankruptcy estate in two of her previous

bankruptcy cases, as well as on her initial Schedule I-Current Income of Individual

Debtor(s) in this case.  Although Debtor subsequently amended her Schedule B-Personal

Property and Schedule I-Current Income of Individual Debtor(s) in this bankruptcy case

removing Dwarfco from her First Amended Schedule B-Personal Property and removing

income from the Dwarfco Deed of Trust from her Schedule I-Current Income of Individual

Debtor(s), no explanation for the amendments was ever provided to the court for such

18

amendments in light of her repeated representations in her prior bankruptcy cases that she owned one-half of Dwarfco and had income from Dwarfco, and given the control and enjoyment of Dwarfco by Defendant Richard Taxe, the Debtor's husband, the court determines that the Debtor had a 50% community property interest in Dwarfco at the time her petition in this bankruptcy case was filed.

14. The preponderance of the evidence shows that the shares in Dwarfco Productions, Inc., are assets of Debtor's bankruptcy estate as the community property of her and Defendant Richard Taxe because these assets were acquired during their marriage which started in 1984, either when Dwarfco was formed in 1990 or thereafter, thus generally presumed to be community property, and Defendant Richard Taxe had possession and control of these assets as of the date of filing of the Debtor's bankruptcy petition.

15. The preponderance of the evidence shows that Defendant Richard Taxe controlled and received all the benefit from Defendant Dwarfco and claims that Defendant Ronald Taxe had an interest in this corporation were merely made to protect this property belonging to Defendant Richard Taxe and the Debtor from his creditors, and as such, the shares of Dwarfco are property of Debtor's bankruptcy estate.

16. The failures of Defendants Dwarfco and Ronald Taxe, the purported owner of Dwarfco, to appear at trial and defend are further indications that Dwarfco and its assets (i.e., the Deed of Trust, the underlying promissory note) belonged to Defendant Richard Taxe and the Debtor, and not them.

17. The preponderance of the evidence shows that the Dwarfco Deed of Trust is property of Debtor's bankruptcy estate of Debtor as the community property of her and Defendant Richard Taxe because it was acquired during their marriage, thus generally presumed to be community property, and Defendant Richard Taxe had possession and control of this asset as of the date of filing of Debtor's bankruptcy petition.

18. The preponderance of the evidence shows that Defendant Richard Taxe

1  controlled and received all of the benefit from the Dwarfco Deed of Trust and the

2  underlying promissory note secured by the Deed of Trust and titling the Deed of Trust in

3  Dwarfco was done merely to protect him from creditors, consistent with his pattern of

4  using other corporations to hold funds and pay his expenses while shielding himself from

5  creditors, and as such, while titled in Dwarfco, the Dwarfco Deed of Trust and the

6  underlying promissory note were community property of Defendant Richard Taxe and the

7  Debtor, and, thus, property of Debtor's bankruptcy estate.

8      19. The preponderance of the evidence shows that the Dwarfco Deed of Trust and

9  the underlying promissory note secured by the Deed of Trust are assets of the Debtor's

10  bankruptcy estate, and Trustee is entitled to collect and receive all payments on the note

11  and to reconvey and, subject to further court approval, to assign the Deed of Trust.  11

12  U.S.C. §§ 541, 542 and 704.

13      20. To the extent that Defendants Richard Taxe, Ronald Taxe, or Dwarfco are in

14  the possession of any original promissory notes or deeds of trust with respect to the

15  Dwarfco Deed of Trust, they are ordered to turn these documents over to Trustee

16  forthwith.

17      21.  The preponderance of the evidence shows that the Kandinsky painting is

18  property of the Debtor's bankruptcy estate of the Debtor as the community property of

19  Defendant Richard Taxe and the Debtor because it was acquired during their marriage,

20  thus generally presumed to be community property, and Defendant Richard Taxe had

21  possession and control of the property as of the date of filing of Debtor's bankruptcy

22  petition.

23      22. The preponderance of the evidence shows that gemstones are property of the

24  bankruptcy estate of Debtor as the community property of Defendant Richard Taxe and

25  the Debtor because these assets were owned during their marriage as indicated on the

26  Debtor's bankruptcy schedules in her 2009 bankruptcy case and by the statements of

27  Richard Taxe described above, and given the lengthy marriage of Defendant Richard

28                                             20

Taxe and the Debtor since 1984, about 30 years to the year of the petition date in this case, the court infers that the gemstones were acquired during this marriage and are thus generally presumed to be community property in the absence of other evidence showing that the gemstones are not community property, and Defendant Richard Taxe had possession and control of the property as of the date of filing of Debtor's bankruptcy petition.

23. As discussed herein, Trustee is not entitled to a judgment against Defendant Richard Taxe for the value of the Kandinsky painting as property of Debtor's bankruptcy estate which he failed to turn over to Trustee pursuant to 11 U.S.C. § 542 and as previously ordered by the court because Trustee has not shown that the painting had any value.

24. As discussed herein, Trustee is entitled to a judgment against Defendant Richard Taxe for the value of the gemstones as property of Debtor's bankruptcy estate which he failed to turn over to Trustee pursuant to 11 U.S.C. § 542 and as previously ordered by the court.

25. Since Trustee has been prevented by Defendant Richard Taxe from ascertaining the value of the Kandinsky painting and the gemstones under the circumstances described herein, the court determines that the most appropriate thing to do under these circumstances is to estimate their value based on the evidence in the record, such as the statements made by Defendant Richard Taxe and the Debtor in this case and in the Debtor's prior bankruptcy cases.

26. Trustee argues that the values of $500 for the Kandinsky painting and $5,000 for the gemstones, as she proposes in this adversary proceeding are reasonable estimates of their value, and that she is entitled to a money judgment against Defendant Richard Taxe in these sums.

27. In his amended proposed findings of fact and conclusions of law, ECF 93,

Defendant Richard Taxe makes numerous factual assertions that he and his spouse, the Debtor, did not own the Dwarfco assets or the gemstones and that the Kandinsky painting was not authentic or had much value, but does not cite to the evidentiary record for such factual assertions, and the court has thoroughly reviewed the evidentiary record and considered his assertions, and finds that they are not supported by the record.

28. The court determines that Trustee has not proven the value of the Kandinsky painting for the court to order that Defendant Richard Taxe pay its value to the estate for failure to turn the painting over.  The court has insufficient evidence to determine whether the painting is authentic or not, or a reproduction or not.  Wassily Kandinsky was a world renowned artist, known as one of the first creators of pure abstraction in modern painting according to the Encyclopedia Britannica.  Article on Wassily Kandinsky, accessed online at www.britannica.com/biography/Wassily-Kandinsky on March 9, 2017.  A Kandinsky painting, if authentic, could be quite valuable, but there is simply insufficient evidence as to the nature, character and value of the painting in the hands of Defendant Richard Taxe for the court to opine on its value. The court determines that Trustee has not met her burden of proving the value of the Kandinsky painting by a preponderance of the evidence, and thus, no award is made for such value.

29. As to the gemstones, the court determines that Trustee has shown by a preponderance of the evidence that Defendant Richard Taxe did not turn over the gemstones in his possession and control at the time that the Debtor filed her bankruptcy petition and that he substituted lesser quality gemstones for the ones he produced later in this case.  The trial testimony of Defendant Richard Taxe regarding the existence and value of the gemstones was inconsistent and evasive, especially his explanation why he did not promptly turn over the gemstones as ordered by the court about 13 months before, which indicates to this court that he did not produce the ones that the Debtor owned when she filed her bankruptcy petition in this case.  Because of Defendant Richard Taxe's evasive and inconsistent testimony, and his unjustified delay in turning

1  over the gemstones, the court accepts the reasonable estimate of value of the

2  gemstones proposed by Trustee of $5,000.00.  Accordingly, the court determines that

3  Defendant Richard Taxe is liable to Trustee for the difference in value of the gemstones

4  he produced of $2,491.00 and the value of the gemstones that he should have turned

5  over pursuant to the order of the court of $5,000.00, or the amount of $2,509.00.

6        30. A separate judgment is being entered concurrently.

7        IT IS SO ORDERED.

8                                            ###

23  Date: March 10, 2017

24                                    _____
                                      Robert Kwan
                                      United States Bankruptcy Judge